PATRICIA J. RYNN State Bar No. 092048
ELISE O'BRIEN, State Bar No. 245967
RYNN & JANOWSKY, LLP
4100 Newport Place Drive, Suite 700
Newport Beach, CA  92660
Telephone:     (949) 752-2911
Facsimile:      (949) 752-0953
E-Mail:  Pat@rjlaw.com
E-Mail: Elise@rjlaw.com

Attorneys for Plaintiffs
SUCASA PRODUCE, et al.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION

| | |
|---|---|
| SUCASA PRODUCE, an Arizona Partnership; P.D.G. PRODUCE, INC., an Arizona corporation; EXPO FRESH, LLC, a California limited liability company; H.M. DISTRIBUTORS, INC., an Arizona corporation; PRIME TIME SALES, LLC, a California limited liability company; VANAL DISTRIBUTING, INC., an Arizona corporation, DEL CAMPO SUPREME, INC., an Arizona corporation; MEYER, LLC, a California limited liability company,<br><br>                       Plaintiffs<br>       vs.<br><br>SAMMY'S PRODUCE, INC., a California corporation; CALIFORNIA PRODUCE EXCHANGE, INC., a California corporation; US FARMS, INC., a California corporation; WORLD GARLIC & SPICE INC., a California corporation; AMERICAN NURSERY EXCHANGE, INC., a California corporation; YAN SKWARA, an individual; SAMUEL V. NUCCI, an individual;  DARIN PINES, an individual,<br><br>                       Defendants. | CASE NO.  08-cv-914 JLS (JMA)<br><br>**DECLARATION OF JIM DETTY IN SUPPORT OF PLAINTIFFS' MOTION TO EXPAND THE PRELIMINARY INJUNCTION; EXHIBITS IN SUPPORT THEREOF** |

1

I, JIM DETTY, declare and depose as follows:

1. I currently am and during all times mentioned in this declaration have been the Credit Manager of Plaintiff and Moving Party herein, Prime Time Sales, LLC ("PRIME TIME").

2. PRIME TIME is a limited liability company in Coachella, California which sells wholesale quantities of perishable agricultural commodities ("produce") under its own name and which is licensed as a dealer under the Perishable Agricultural Commodities Act of 1930, as amended, [7 U.S.C. §499a, *et seq.*] ("PACA").

3. I am personally familiar with all matters which are the subject of this declaration and the facts stated herein are based upon my own personal knowledge, except as to those matters based upon information and belief, and as to those matters, I believe them to be true. If called as a witness in this proceeding, I would and could competently testify to the matters stated herein.

4. PRIME TIME is a produce creditor of Defendant, Sammy's Produce, Inc. ("SAMMY'S"). SAMMY'S is a produce dealer as defined under 7 U.S.C. §499a, and operates subject to and is licensed under the PACA. SAMMY'S operates as wholesale buyer and seller of perishable agricultural commodities, and in that capacity has purchased perishable agricultural commodities from Plaintiff for resale to SAMMY'S own customers.

5. Defendants Yan Skwara ("SKWARA"), Samuel V. Nucci ("NUCCI"), and Darin Pines ("PINES") are listed as SAMMY'S President, Vice President of Sales and Vice President of Operations, respectively, with the Blue Book (a credit service for the produce industry). As such, and based on my conversations with Mr. NUCCI, Mr. PINES and Mr. SKWARA, I believe that each of the individuals named as Defendants herein (SKWARA, NUCCI and PINES) are and were responsible for the day-to-day operations of SAMMY'S during all material times herein, and were in a position to control the PACA Trust assets in SAMMY'S possession which belong to PRIME TIME.

6. I make this declaration in support of Plaintiffs' Motion to Expand the Preliminary Injunction to prevent Defendants' further dissipation of PACA trust assets and to compel immediate turnover of all such trust assets rightfully belonging to Plaintiffs.

2

7. As Credit Manager of PRIME TIME, my responsibilities include monitoring its sales of perishable agricultural commodities, including the sales that are the subject of this dispute, and supervising collection of its accounts receivable for such sales. I have custody and control of PRIME TIME'S sales and accounts receivable records as they relate to Defendant SAMMY'S, and I am thoroughly familiar with the manner in which those records are compiled.

8. The sales and accounts receivable records of Plaintiffs, including invoices, billing statements and other related documents, are made in the ordinary course of business and are made at or near the time of the occurrence of the event of which they are a record. These sales records are made either by me or under my direction and supervision by PRIME TIME'S employees whose duty it is to make such documents.

9. The produce that is the subject of this dispute was sold and shipped in or in contemplation of interstate or foreign commerce.

10. The total balance due to PRIME TIME from Defendants results from one (1) transaction involving tomatoes, a perishable agricultural commodity, shipped on January 10, 2008, which Defendant SAMMY'S accepted without objection, for the agreed-upon selling price as reflected on PRIME TIME'S invoice, of which the principal amount of $11,156.00 remains outstanding and seriously past due.

11. An invoice for the shipment was prepared and mailed to Defendant SAMMY'S by PRIME TIME on or about the day of the transaction. A true and correct copy of Plaintiff PRIME TIME'S invoice confirming the sale is appended hereto and incorporated herein by reference as **Exhibit 1**.

12. Although Defendant SAMMY'S received and accepted the produce shipment *without objection*, Defendant SAMMY'S has failed to pay for the produce that it purchased from PRIME TIME, with the exception of one payment in the amount of $2,000.00 which was made on May 12, 2008.

13. As Credit Manager of Plaintiff PRIME TIME, I review and approve any price adjustments, credits or discounts issued by PRIME TIME in connection with the sales that are the

3

1  subject of this dispute. As of the date of this Declaration, no price adjustments of any amount have
2  been issued to Defendants.

3       14. Further, as Credit Manager of PRIME TIME, it is my responsibility to make certain
4  that PRIME TIME complies with all requirements necessary to preserve its trust rights under
5  PACA for all unpaid shipments of produce, including the shipments that are the subject of this
6  dispute. PRIME TIME is now, and during all times herein has been a PACA licensee, operating
7  under PACA license no. 20020361. In compliance with the statutory filing requirements, I made
8  certain that each of PRIME TIME'S invoices set forth the following statutory language required by
9  PACA to preserve PRIME TIME'S PACA trust benefits:

> *"The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities and any receivables or proceeds from the sale of these commodities until full payment is received."*

*See,* Exhibit 1, which shows that the above-quoted language appears on the face of the invoice sent to Defendants concerning the transaction that is the subject of this dispute.

     15. For the above-stated reasons, I am confident that PRIME TIME has taken all steps necessary to preserve its PACA trust rights in connection with its outstanding invoices in this proceeding.

     16. Plaintiffs' invoices issued to Defendant SAMMY'S contain PACA Prompt payment terms, or terms of net 10 days. However, as of the date of this declaration, the principal balance of $11,156.00 due to PRIME TIME from Defendants remains delinquent. Because of Defendants' failure to pay, and the seriously delinquent status of its account with our Company, and SAMMY'S admitted lack of sufficient funds to pay the amount it owes PRIME TIME, I believe that there is a great risk that PRIME TIME will not recover the balance due to it without this Court's intervention and issuance of an order restraining Defendants from further dissipation of PACA trust assets.

4

17.     In or about February 2008, I began placing weekly telephone calls to SAMMY'S requesting the payment of the amount due to PRIME TIME. Initially I spoke only with Sam NUCCI, who assured me on several occasions that PRIME TIME would be paid. At some point in February 2008, however, Sam NUCCI told me that I should call and speak to a woman named Tiffany who worked for SAMMY'S. Each time I spoke with Tiffany, she also assured me that PRIME TIME would be paid and told me that Sammy's was "waiting for deposits" and that she would call me back and give me the check information when she had it.

18.     In or about March 2008, after receiving several broken promises of payment from Tiffany, I called Sam NUCCI again to inquire about the outstanding invoice. Mr. NUCCI directed me to call Darin PINES, telling me that Mr. PINES would be able to make sure that PRIME TIME received payment. When I spoke with Mr. PINES, he asked to see a copy of the invoice (which I provided him) and told me that he would look into the matter. During follow up conversations with Mr. PINES, he told me not to worry and assured me PRIME TIME would be paid.

19.     On April 22, 2008, after leaving several voicemails for both Tiffany and Mr. PINES, I asked Tom Oliveri, the Director of Trade Practices & Commodity Services at the Western Growers Association, to send a letter to SAMMY'S on PRIME TIME'S behalf to collect payment. A true and correct copy of that letter is attached as **Exhibit 2.**

20.     Sometime after Mr. Oliveri's letter was sent, Yan SKWARA called me to "work out a deal." I told Mr. SKWARA that I would be happy to accept a check for the full amount owed to PRIME TIME, but that I would not entertain any deals.

21.     On May 12, 2008, I received a check from SAMMY'S in the amount of $2,000.00. Deducting this amount from the original invoice price of $13,156.00, SAMMY'S still owes a balance of $11,156.00.

22.     At no time have any of the Defendants, or anyone acting on behalf of Defendants, ever denied owing Plaintiff PRIME TIME money for the produce it received, nor have they disputed that the principal balance of $11,156.00 remains due to PRIME TIME from SAMMY'S.

23.     Because Defendants have (a) admitted that they cannot promptly and fully pay the PACA trust debt to PRIME TIME and (b) repeatedly failed to remit payments as promised, I am

quite certain that Defendants have dissipated the PACA trust assets they control in violation of PACA. Absent immediate intervention from this Court, I believe those trust assets, which rightfully belong to the Plaintiffs in this action, will continue to be dissipated and will remain beyond the reach of the Plaintiffs herein.

24. PRIME TIME relies upon its customers' prompt payment for produce sales so that it can effectively and adequately manage its current payables to its own vendors, monitor its cash flow, and make informed business decisions. The failure of Defendants to adequately preserve Plaintiffs' PACA trust assets and to pay the amounts due has jeopardized and will continue to jeopardize the ability of PRIME TIME to properly operate its business, to make informed business decisions, to make necessary purchases and acquisitions, and to pay some of its own suppliers.

25. For the above reasons, PRIME TIME has been economically harmed and will likely be irreparably harmed if the PACA trust assets in Defendants' possession are allowed to continue being dissipated and diverted to other uses. The PACA assets which Defendants now possess rightfully belong to Plaintiffs. These trust assets, including inventory and accounts receivable, must be preserved for the benefit of and remitted to Plaintiffs.

26. Unless this Court expands the Preliminary Injunction requested by Plaintiffs, in my view, the remaining PACA trust assets being held by Defendants will be further dissipated, and PRIME TIME'S chances of recovering the amounts due it for the produce sold to SAMMY'S will have been thereby effectively undermined. For these reasons, I respectfully urge this Court to issue the requested relief.

I declare under penalty of perjury under the laws of the States of California and the United States of America that the foregoing is true and correct.

Executed this 26th day of June 2008 in Coachella, California.

_____
JIM DETTY

6

# EXHIBIT 1



# INVOICE

Prime Time Sales, LLC

86-705 AVE. 54, STE A
COACHELLA, CA 92236
(760) 399-4166

Invoice #: 145320
Invoice: Jan 11, 2008
Ship:    Jan 10, 2008
Pay Terms: Net 10

Customer Id: SAMMYS

Sold To: Sammy's Produce
(A d/b/a of Samlis, Inc)
P.O. Box 0095
Vista CA 92085-0095
US

Ship To: Sammy's Produce
(A d/b/a of Samlis, Inc)
P.O. Box 0095
Vista CA 92085-0095
US

Sale Terms: FOB          Salesperson: Jeff Taylor       Carrier: SAMMY'S
Order: Jan 10, 2008      Via:                           Trailer lic: 8L12533   St: CA
Cust PO:                 Currency: USD                  Broker:

| Description / Warehouse | | Quantity | UOM | Price | Amount |
|---|---|---|---|---|---|
| Beefsteak Tomato 2 Layer 5x5 Prime Time | BCS Produce | 880 | ctn | 14.95 | $13,156.00 |
| INVOICE TOTAL: | | 880 | | | $13,156.00 |

*File Copy*

The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5c of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C 499e ). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities and any receivables or proceeds from the sale of these commodities until full payment is received.

—8—

# EXHIBIT 2

April 23, 2008
WGA #17977


Mr. Sam Nucci
Sammy's Produce
A d/b/a of Samlis, Inc.
P.O. Box 0095
Vista, CA 92085-0095

Dear Mr. Nucci:

Re:    **Prime Time Int. Sales, Invoice #145320**

Prime Time International Sales, Coachella, California has asked that I personally contact you as it relates to your firm's January 10, 2008 purchase of 880 cartons of *Beefsteak Tomatoes* 5 x 5 purchased at a confirmed price of $14.95 per carton for a total FOB invoice value of $13,156.00. Through today's date this invoice continues to remain delinquent and unpaid.

To enable Prime Time Sales International to bring this matter to a closure we would seek your immediate assistance in forwarding your check to this office made payable to Prime Time Sales LLC for the full balance due of $13,156.00. May we please receive your remittance no later than April 30th. In the event we do not receive your check by April 30th you will leave this office no alternative but to seek the assistance of the PACA in filing a reparation complaint against the license of Sammy's Produce. Thank you for your prompt and courteous attention this matter.

Very truly yours,



THOMAS R. OLIVERI
Director, Trade Practices & Commodity Services

TRO/tmg

C:    Prime Time Int. Sales