PATRICIA J. RYNN State Bar No. 092048
ELISE O'BRIEN, State Bar No. 245967
RYNN & JANOWSKY, LLP
4100 Newport Place Drive, Suite 700
Newport Beach, CA 92660
Telephone: (949) 752-2911
Facsimile: (949) 752-0953
E-Mail: Pat@rjlaw.com
E-Mail: Elise@rjlaw.com

Attorneys for Plaintiffs
SUCASA PRODUCE, et al.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION

| | |
|---|---|
| SUCASA PRODUCE, an Arizona Partnership; P.D.G. PRODUCE, INC., an Arizona corporation.<br><br>Plaintiffs,<br><br>vs.<br><br>SAMMY'S PRODUCE, INC., a California corporation; YAN SKWARA, an individual; SAMUEL V. NUCCI, an individual; DARIN PINES, an individual,<br><br>Defendants. | CASE NO. 08-cv-914 JLS (JMA)<br><br>**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' EX PARTE MOTION FOR ORDER SHORTENING TIME FOR LEAVE TO AMEND COMPLAINT AND TO EXPAND THE PRELIMINARY INJUNCTION**<br><br>**DATE:** Thursday, August 28, 2008<br>**TIME:** 1:30 p.m.<br>**ROOM:** 6 |

## I.

## INTRODUCTION

The PACA Trust Creditors, which, in addition to original Plaintiffs SUCASA PRODUCE and P.D.G. PRODUCE, INC., now, under the proposed amended Complaint, include EXPO FRESH, LLC, H.M. DISTRIBUTORS, INC., PRIME TIME SALES, LLC, VANAL DISTRIBUTING, INC., DEL CAMPO SUPREME, INC., and MEYER, LLC. (hereafter "Newly-Named Plaintiffs"), along with the original Plaintiffs, supplied Defendants with wholesale quantities of fresh fruits and vegetables ("Produce") worth in excess of $832,243.55 in aggregate, all of which qualify for protection under the provisions of the PACA. (*See,*

1

Declarations of Cesar Parada, Alma Noriega, Humberto Monteverde, James Detty, Robert Schachtel, and Laura de la Rosa filed concurrently with Plaintiffs' Motion). The amounts due the Newly-Named Plaintiffs for the perishable agricultural commodities purchased by and delivered to Sammy's, together with the amounts due the original Plaintiffs, have not been paid by Defendants and remain past due.

Plaintiffs have moved for leave to add U.S. Farms, Inc., California Produce Exchange, Inc., and American Nursery Exchange, Inc. (the "Newly-Named Defendants") to its Amended Complaint. In addition, Plaintiffs seek an order from this Court binding the Newly-Named Defendants to the terms of the Preliminary Injunction Order currently in place against the original Defendants. US Farms, Inc. is the shareholder of California Produce Exchange, Inc. which owns Sammy's, and as the owner in control of Sammy's assets, is liable to PACA creditors for diversion or defalcation of such assets. *See, Cooseman's Specialties, Inc. v. Gargiulo,* 485 F. 3d 701 (2d Cir. 2007). Moreover, US Farms, Inc., is an insider parent Company of Sammy's, and as such, the unjust transfer of at least $182,350.00 in funds held by Sammy's to itself in March and April of 2008 was a direct and blatant violation of the PACA Trust rights of Plaintiffs, is subject to disgorgement. *See, Bronia, Inc. v. Ho,* 873 F. Supp. 854 (S.D.N.Y. 1995).

In spite of demands relayed to counsel for Defendants, US Farms, Inc. has failed or refused to reimburse the $182,350.00 to the PACA Trust corpus. In fact, correspondence from counsel for Defendants suggests that US Farms, Inc. "lost over $3 million last year alone…" and does "…not have the $200,000 laying around to re-loan Sammy's…" The professed inability of US Farms, Inc., the parent company of a network of corporate entities, to reimburse the $182,350.00 misappropriated from Sammy's in breach of PACA is the basis for Plaintiffs' significant insecurity and uncertainty about their prospects for recovering the amounts due them from Sammy's, or from its controlling parent, or from companies affiliated with Sammy's. Notably, neither US Farms, Inc. nor any of the other Defendants have provided the Court with any reason to believe that Plaintiffs fears about the continued financial viability of US Farms, Inc. and all of its subsidiaries are unfounded.

Finally, Plaintiffs seek an Order shortening time to have its Motions heard because Plaintiffs' attempts to ensure that any assets now held by the Newly-Named Defendants will not be completely dissipated are not likely to succeed unless an order extending the injunction to the Newly-Named related entities exerting control over Sammy's PACA assets and indebtedness can be obtained in a timely fashion (sooner than August 28). It is quite plain that Defendant Yan Skwara is the puppeteer pulling all the strings of the group of related corporate entities beginning with their parent, US Farms, Inc. It is equally apparent that US Farms, Inc., and each of its subsidiaries are merely cards in a precariously structured house of cards which is likely to collapse soon. Unless the Court agrees to expand the Preliminary Injunction to cover Sammy's parent company and related entities, and does so without delay, it is quite possible that Plaintiffs will not be able to safeguard whatever assets remain in the hands of the Defendants or to obtain any realistic chance of recovering the sums due them.

Accordingly, Plaintiffs hereby petition this court to extend the existing Preliminary Injunction Order to bind the Newly-Named Defendants U.S. Farms, Inc., California Produce Exchange, Inc., fulfill their duties as statutory trustees, the PACA Trust Creditors request that the Defendants be required to segregate sufficient monies to pay all pre-petition PACA trust claims in full.

## II.

## DEFENDANTS' OPPOSITION DOES NOT ADDRESS THE MERITS
## OF THE RELIEF REQUESTED BY PLAINTIFFS

On July 13, 2008 Defendants Sammy's Produce, Inc. ("Sammy's"), Yan Skwara ("Skwara") and Darin Pines ("Pines") filed an Opposition to Plaintiffs' *Ex Parte* Motion for Order Shortening Time. The Opposition is more remarkable for what it does not state than for what it does state. Rather than providing any substantive defenses or bases to object to the proposed Amendment to the Complaint or expansion of the preliminary Injunction Order, Defendants' Opposition focuses solely on the timing of Plaintiffs' submissions of its Motions.

Defendants' Opposition, for example, does not take exception to the claim of Newly-Named Plaintiff Expo Fresh, Inc., namely, that it sold Sammy's $254,441.95 worth of fresh

produce all of which is subject to PACA Trust protection and no part of which has been paid; or to the validity of the unpaid PACA trust claim of H M Distributors, Inc. in the amount of $60,931.80.; or to the validity of the unpaid PACA trust claim of Prime Time Sales, LLC in the amount of $13,156.00; or to the validity of the unpaid PACA trust claim of Vanal Distributing, Inc. in the amount of $136,839.30; or to the validity of the unpaid PACA trust claim of Del Campo in the sum of $81,926.40; or to the validity of the unpaid PACA trust claim of Meyer in the sum of $5,892.00.

Nor does Defendants' Opposition contest the fact that Newly-Named Defendant US Farms, Inc. removed over $182,000 in funds from Sammy's account at a time when Plaintiffs were attempting to obtain payment for produce sold to Sammy's.

Nor do Defendants dispute that any of the other Newly-Named Defendants (California Produce Exchange, Inc., American Nursery Exchange, Inc. or World Garlic & Spice, Inc.) have comingled their funds with those of Sammy's.

Nor does the Opposition submitted by Defendants deny that US Farms, Inc. or any of the other Newly-Named Defendants are insolvent or are the brink of insolvency.

Instead, Defendants' Opposition seems intent only to call attention to the fact that some of the evidence Plaintiffs' point to as justification for expanding its application of the Preliminary Injunction to the Newly-Named Defendants was previously alluded to in earlier declarations to submitted to the Court and was therefore not "newly discovered" evidence.[1]

///

///

///

---

[1] Obviously, Rynn's June 4 Declaration made reference to recently received allegations before the percipient witness, Cesar Parada, could provide his Declaration. Moreover, as Defendants' counsel well knows, the prospective Plaintiffs in this case did not contact counsel for Plaintiff on a single date, but overt the course of several weeks.

4

### III.

### THE NEWLY NAMED PACA TRUST CREDITORS PERFECTED THEIR RIGHT TO PACA TRUST BENEFITS BY ISSUING INVOICES TO THE DEFENDANTS THAT CONTAIN THE STATUTORY LANGUAGE NECESSARY TO PRESERVE PACA TRUST RIGHTS IN COMPLIANCE WITH 7 U.S.C. §499e(c)(4)

As PACA licensees, the PACA Trust Creditors are entitled to preserve PACA trust rights by using ordinary and usual invoice statements to provide notice of their intent to preserve its trust benefits. 7 U.S.C. §499e(c)(4). Specifically, a licensee who includes the following statement on the face of its invoices will have preserved its PACA trust rights:

> *The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, l930 (7 U.S.C. §499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received. 7 U.S.C. §499e(c)(4).*

By including the statutory language on their invoices to the Defendants or by sending the Defendants a separate notice of intent, the PACA Trust Creditors have taken all steps necessary to preserve their rights as PACA trust creditors for all transactions which are the subject of those invoices.

### IV.

### THE PACA ESTABLISHES A TRUST FOR THE BENEFIT OF ALL PACA TRUST BENEFICIARIES

The PACA provides that the PACA Trust is created by operation of law upon the delivery of perishable agricultural commodities. In enacting the PACA Trust Amendment, Congress recognized the importance of protecting the seller's perishable agricultural commodities. In particular, the PACA states as follows:

> *It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which...dealers...who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled*

5

> *by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products,* ***and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.*** 7 U.S.C. §499e(c)(1) (Supp. 1986). (Emphasis added).

Upon Sammy's receipt of the produce, a PACA trust was created in favor of all unpaid sellers, over all perishable agricultural commodities, all inventories of food or other products derived from perishable agricultural commodities, as well as any receivables or proceeds from the sale of such commodities or products. 7 U.S.C. §499e(c)(2) (Supp. 1986). Accordingly, as soon as Defendants received the produce sold by the PACA Trust Creditors, the PACA Trust was created by operation of law.

## IV.

## AS A MATTER OF LAW, PACA TRUST ASSETS ARE NOT THE PROPERTY OF DEFENDANTS, BUT RATHER, RIGHTFULLY BELONG TO THE PACA TRUST BENEFICIARIES AND MUST BE IMMEDIATELY SEGREGATED

PACA trust assets are not considered property of the buyer, but are held in trust for the benefit of the seller until the seller receives payment in full. *In re Kornblum & Co.*, 81 F.3d 280, 284 (2d Cir.1996); Stowe *Potato Sales, Inc. v. Terry's, Inc.*, 224 B.R. 329 (W.D. Va. 1998). Because PACA trust assets are not the property of the purchaser until payment has been made, those assets must be immediately set aside for distribution to the trust beneficiaries. *In re Long John Silver's Restaurants, Inc.*, 230 B.R. 32 (Bkrtcy. D. Del. 1999); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bkrtcy. C.D. Ill. 1997); *In re Southland & Keystone*, 132 B.R. 632 (9th Cir. BAP 1991); *In re Megafoods Stores, Inc.*, 163 F.3d. 1063 (9th Cir. 1998); *In re Carolina Produce Distributors, Inc.*, 110 B.R. 207 (W.D.N.C. 1988); *In re Asinelli, Inc.*, 93 B.R. 433 (M.D.N.C. 1988); *In re Fresh Approach, Inc.*, 51 B.R. 412 (Bkrtcy. N.D. Texas 1985); *In re Milton Poulos, Inc.*, 947 F.2d 1351 (9th Cir. 1991).

In *Fresh Approach, supra,* the court concluded that the PACA trust creditors were entitled to <u>immediate</u> payment from the debtor. Likewise, *In re W.L. Bradley Co., Inc.*, 75 B.R.

505 (Bkrtcy. E.D. Pa. 1987), the bankruptcy court concluded that the funds subject to the PACA trust did not become property of the estate and that the unpaid produce seller was unquestionably entitled to <u>immediate payment of such funds</u>. *See also, In re Kelly Food Products, Inc., supra.*

By leaving PACA Trust Creditors unpaid and not making provision to ensure that sufficient assets are preserved to ensure that PACA creditors receive payment promptly and in full, Defendants have violated 7 U.S.C. §499e *et seq*. The Court's decision in *In re Nagelberg & Co., Inc.*, 84 B.R. 19 (Bkrtcy. S.D.N.Y. 1988), confirmed that dissipation of PACA trust assets results from *any* act which *could* result in the diversion of such assets or which *could* prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions. *See also*, 7 C.F.R. §46.46 (b)(2). Defendants' Opposition to Plaintiffs' requested relief suggests that Defendants would have Plaintiffs wait an indefinite period of time for recovery of the amounts due them.

Further, the Defendants' inability or refusal to immediately pay valid PACA trust claims is a violation of the Defendants' duty to maintain sufficient PACA trust assets that are freely available to satisfy unpaid Produce suppliers. 7 C.F.R. §46.46(d)(1). *See also, C.H. Robinson v. Alanco Corp.*, 239 F.3d 483, 488 (2d Cir. 2001).

In the instant case, where the Defendants' own accountings and balance sheet admits of the Defendants' financial difficulties, and the Defendants prefer an indefinite deferment of paying PACA trust claims (on the basis that new investor money might be received), this Court should follow *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990). In *Frio Ice*, the Eleventh Circuit Court of Appeals directed the district court to employ its equitable powers to segregate PACA trust funds for the benefit of all unpaid sellers. *Id.* at 159. Segregation often may be the only means by which a federal court can prevent dissipation. *Id.* at 159, citing H. Rep. No. 543, 98th Cong., 2d Sess. 4, reprinted in 1984 U.S. Code Cong. & Admin. News 405, 407.

Thus, unless all Defendants, including those Newly-Named Defendants are required to segregate sufficient funds to satisfy all PACA claims, (for which Defendants have made no provision whatsoever), Defendants will have succeeded in using PACA trust assets to operate

and pay creditors other than those with PACA priority trust rights. PACA strictly prohibits such diversion of trust funds. As the Court reasoned in *Morris Okun v. Harry Zimmerman, Inc.,* 814 F. Supp. 346, at 348 (S.D.N.Y. 1993), "*...a PACA trust in effect imposes liability on a trustee whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier. This includes use of the proceeds from the sale of perishables for legitimate business expenditures such as the payment of rent, payroll, or utilities.*"

## V.

## DEFENDANTS HAVE THE BURDEN OF PROVING WHICH ASSETS ARE NOT SUBJECT TO THE PACA TRUST

The PACA Trust does not require tracing and therefore trust assets are to be preserved as a non-segregated "floating trust." In addition, the PACA acknowledges that commingling is contemplated. If a dispute arises regarding the identification of the trust assets, the Defendants have the burden to establish what, if any, assets are *not* subject to the PACA Trust.

In the *In re Fresh Approach*, 51 B.R. 412, 422 (Bkrtcy. N.D. Texas 1985) case, ["*Fresh Approach II*"], a seminal judicial decision analyzing the impact of the statutory trust provisions, the court clarified the non-segregated, floating character of the PACA trust. In accordance with legislative directives, the *Fresh Approach II* court based its decision upon the Packers and Stockyards Act, 1921 [7 U.S.C. §181, *et seq.*] (hereinafter "PSA"), the federal law after which the PACA was modeled), and its subsequent line of cases, concluding that the trust created by the PACA was intended to be a "floating non-segregated statutory trust," to which claimants need not trace funds. *See*, *In re Monterey House*, 71 B.R. 244, 247 (Bkrtcy. S.D. Texas 1986). Furthermore, the court in *First State Bank v. Gotham Provision Co.* (*In re Gotham Provision Co.*), 699 F.2d 1000, 1011 (5th Cir. 1982) (hereinafter "*Gotham*"), in holding that the PSA established a floating trust, stated:

> [W]here trust funds are commingled with funds not subject to the trust, a lien on the entire commingled fund exists for the benefit of the beneficiaries of the trust.

The *Gotham* court further held that when commingling occurs, the only burden on the unpaid sellers is to prove the balance due to them and the existence of a floating pool of commingled inventories of livestock products, accounts receivable), and proceeds derived from cash and credit sales. *Id.* The court in *Gotham* clearly placed the burden on the bankruptcy trustee (and the lending institution) to show that the receivables were *not* subject to the PACA trust. *Id.* at 1012. *In re Hancock-Nelson Mercantile, Inc.*, 95 B.R. 982 (Bkrtcy. N.D. Minn. 1989); *In re W.L. Bradley Company, Inc.*, 75 B.R. 505 (E.D. Pa. 1987).

*In re Kornblum & Co., Inc.,* 81 F.3d 280 (2d Cir. 1996) is particularly instructive because of its analysis of the issue of what property makes up the corpus of the PACA Trust. The *Kornblum* court rejected the debtor's contention that the only assets that are held in trust for a particular PACA beneficiary are the specific produce or proceeds supplied by that beneficiary. The court accepted the beneficiaries' argument that the *res* of the PACA Trust is not so limited and that "a single PACA trust exists for the benefit of all of the sellers to a produce debtor, and continues in existence until all of the outstanding beneficiaries have been paid in full."

The *Kornblum* court set forth a three-prong test for analyzing whether specific property is part of the PACA Trust. In order to prove that the property **is not** part of the PACA Trust, the **debtor has the burden** to establish either that (1) no PACA trust existed when the specific property was purchased; (2) even though a PACA Trust existed at that time, the property was not purchased with trust assets; or (3) although a PACA Trust existed when the property was purchased and the property was purchased with trust assets, the debtor thereafter paid all unpaid sellers in full prior to the transactions involving the creditors, thereby terminating the trust.

Moreover, in *In re Atlantic Tropical Market Corporation*, 118 B.R. 139 (Bkrtcy. S.D. Fla. 1990), the court held that the PACA trust fund is established upon the commencement of the purchaser's produce related business. The court held that any business assets purchased by one who is in the business of buying and selling produce will be presumed to have been purchased with PACA trust assets, and any such assets may thus be viewed as collateral until the PACA trust claim has been paid in full. *See also, Sanzone-Palmisano Company v. M. Seaman*

*Enterprises, Inc.*, 986 F.2d 1010 (6th Cir. 1993), cited with approval in *In Re Kornblum & Co., supra* at 285.

Accordingly, the PACA Trust Creditors are not required to trace trust funds. All of the Defendants' assets are presumptively deemed to be subject to the PACA trust and remain so unless the Defendants prove otherwise.

## VI.

## THE PACA TRUST CLAIMS ARE SUPERIOR TO AND TAKE PRIORITY OVER ALL OTHER SECURED OR UNSECURED CLAIMS

The agriculture industry is unique because of the short life span of agriculture products and thus Congress has recognized that the industry itself must be protected by granting priority status to sellers of produce over other lenders who take liens on accounts, inventory and the proceeds thereof. [7 U.S.C. §499 e(c)(1)] (Supp. 1986). Thus, if payments are not made to produce suppliers, the plain wording of the PACA compels this Court to give the PACA Trust Creditors' trust claims priority over all other secured or unsecured claims against Defendants. *See*, *In re Monterey House, Inc.*, *supra*, at 249; *accord*, *In re Milton Poulos, Inc.*, 947 F.2d 1351 (9th Cir. 1991); *see also*, *In re Prange Foods Corp.*, 63 B.R. 211 (Bkrtcy. W.D. Mich. 1986); *Fresh Approach II*, *supra*, at p. 420-422.

Accordingly, unpaid PACA Trust Creditors take priority over all other creditors, secured and unsecured, on the produce buyer's assets to the full extent of their claim. *Hiller Cranberry Products, Inc. v. Koplovsky*, 165 F.3d 1 (Mass. 1999). *See also*, *C.H. Robinson Company v. Alanco Corp.*, 239 F.3d 483 (2d Cir. 2001) which held:

> *Allowing a ... PACA trustee to pay any other creditors with, PACA funds before the Seller is paid in full would frustrate [PACA's] purpose, and would be contrary to the language of PACA and its accompanying regulations. PACA trust beneficiaries are entitled to full payment **before** trustees may lawfully use trust funds to pay any other creditors. Id.* at 488 (emphasis added).

///

///

# VII.

# EXEMPTION OF DEFENDANTS CALIFORNIA PRODUCE EXCHANGE, INC., US FARMS, INC., WORLD GARLIC & SPICE, INC., AND AMERICAN NURSERY EXCHANGE, INC. FROM THE REQUIREMENTS OF THE PRELIMINARY INJUNCTION WOULD CONTRAVENE BOTH THE LETTER AND THE SPIRIT OF THE PACA STATUTE

Allowing the newly named Defendants to continue their unfettered control, diversion and dissipation of Plaintiffs' Trust assets would allow Mr. Skwara to make a mockery of the PACA statute and the protection it in intended to afford unpaid produce sellers. Additionally, it would allow Defendants an unlimited amount of time to collect receivables with absolutely no assurances or safeguards in place to ensure that US Farms, Inc. will have the wherewithal to repay the $182,350.00 it removed from the coffers of Sammy's Produce, Inc. ahead of the unpaid PACA creditors with priority Trust claims.

It is well established that those persons or entities controlling the day to day operations of a PACA trustee are also liable for breach of the PACA trust. *Sunkist Growers, Inc. v. Fisher,* 104 F. 3d 280, 282 (9th Cir. 1997); *Red's Market v.Cape Canaveral Cruise Lines, Inc.,* 181 F. Supp. 2d 1339 (M.D. Fla. 2002). It is equally well established that where a secured lender (even one non-affiliated with the PACA trustee), cause a forced transfer of PACA trust assets, as US Farms, Inc. apparently did, it is routinely required to disgorge those assets wrongfully acquired in violation of PACA. *C.H. Robinson Co. v. Trust Co. Bank, N.A.,* 952 F.2d 1311 (11th Cir. 1992); *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F. 3d 1063 (2d Cir. 1995).

Thus, the Newly-Named Defendants should be required to immediately turnover trust funds belonging to the unpaid trust beneficiaries of Sammy's Produce. Allowing the Newly-Named Defendants to remain unaccountable to the Plaintiffs and essentially "off the hook" with respect to the sequestration and turnover of trust assets usurped and controlled by such entities will have a devastating affect on the PACA Trust Creditors who anticipated receiving proceeds from the sale of produce to Sammy's Produce, Inc. when due. The PACA Trust Creditors rely on the prompt payment of products sold to their customers to effectively and adequately manage

their current payables and receivables schedules, monitor cash flow, make informed business decisions and, significantly, to purchase their own produce and pay their own PACA trust creditors. 7 U.S.C. § 499(b)(4) (failure to make prompt payment and to preserve the trust are violations of PACA).

The failure of Defendants to preserve the PACA trust assets and to pay the amounts due their PACA creditors has jeopardized, and will continue to jeopardize, the ability of the PACA Trust Creditors to properly operate their businesses, to make informed business decisions to purchase new product, and to pay some of their own suppliers, many of whom are themselves PACA trust creditors. This is precisely the type of "domino effect" that the PACA and its trust provisions were enacted to prevent.

The Newly-Named Defendants must be compelled to make full payment to Sammy's PACA creditors by a date certain, or, alternatively, provide for a segregation of sufficient PACA trust assets to satisfy all PACA trust creditors. Defendants' Opposition to the imposition of any restrictions whatsoever on their operations flies in the face of the PACA statute, and thwarts the legislative intent underlying the PACA, which has been one of the "most successful regulatory programs" originally enacted by Congress in 1930. *Birkenfield v. U.S.,* 369 F.2d 491, 494 (3d Cir. 1966).

The Newly-Named Defendants should accordingly be required to sequester sufficient assets to satisfy the aggregate PACA claims totaling at least $914,527.28 (attorneys fees, filing fee and accrued finance charges through July 15, 2008) for the benefit of the unpaid PACA sellers of Sammy's Produce, Inc., and when sufficient trust amounts have been sequestered, the Defendants should be required to pay all such PACA claims.

Unless the proposed modifications are incorporated into Plaintiffs' proposed Preliminary Injunction, the existing Preliminary Injunction Order will provide Mr. Skwara and US Farms, Inc. the means to continue dissipating PACA trust assets they siphoned from Sammy's Produce, Inc. in violation of the PACA statute, and would have a disastrous effect on the PACA Trust Creditors represented by the undersigned.

# VIII.

# CONCLUSION

For all the foregoing reasons, the PACA trust creditors urge this Court to reject the non-substantive opposition to Plaintiffs' Application to expand the PI Order to include, at the very least, those known corporate defendants which played a role in comingling, diverting, removing, or transferring PACA trust assets belonging to Plaintiffs which should have remained in the possession of Sammy's and promptly paid to its produce creditors. To do less would be to consciously permit the Newly-Named Defendants to run afoul of PACA, and would thwart PACA's important objectives. In order to comply with PACA, the proposed Order should be amended to require Defendants to immediately set aside at least $914,527.28 into a segregated account, or to make immediate payment to the PACA trust claimants within ten (10) days.

A proposed Order Expanding the Preliminary Injunction Order has been filed concurrently with Plaintiffs' Motion.

Respectfully submitted,

RYNN & JANOWSKY, LLP

DATED: July 15, 2008         By:    /s/ Patricia J. Rynn
                                    PATRICIA J. RYNN
                                    Attorneys for Plaintiffs SUCASA
                                    PRODUCE and PDG PRODUCE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2008, I electronically transmitted the following documents to the ECF registrants listed below:

**1.   Reply To Defendants' Opposition To Plaintiffs' Ex Parte Motion For Order Shortening Time For Leave To Amend Complaint And To Expand The Preliminary Injunction**

| | |
|---|---|
| Bryan W Pease | bryanpease@gmail.com |
| Patricia Jane Rynn | pat@rjlaw.com, tim@rjlaw.com |
| Gregory James Testa | info@testalaw.com |

I hereby certify that on July 15, 2008, I served the attached document via regular U.S. Mail, postage pre-paid on the following parties:

**None.**

Respectfully Submitted,

RYNN & JANOWSKY, LLP

DATED: July 15, 2008         By:   /s/ Patricia J. Rynn
                                   PATRICIA J. RYNN, attorneys
                                   for Plaintiffs SUCASA PRODUCE, et al.

14