1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                       SOUTHERN DISTRICT OF CALIFORNIA
10
11   SUCASA PRODUCE, an Arizona                    CASE NO. 08cv 914 JLS (JMA)
     Partnership; P.D.G. PRODUCE, INC., an
12   Arizona corporation,                          **ORDER: (1) GRANTING
                                                   PLAINTIFFS' MOTION TO
13                                Plaintiffs,       AMEND THE COMPLAINT AND
                                                   (2) DENYING PLAINTIFFS'
14        vs.                                      MOTION TO EXPAND THE
                                                   PRELIMINARY INJUNCTION
15   SAMMY'S PRODUCE, INC., a California            ORDER WITHOUT PREJUDICE**
     corporation; YAN SKWARA, an individual;
16   SAMUEL V. NUCCI, an individual;
     DARIN PINES, an individual,
17
                                 Defendants.
18
19
20        Presently before the Court are Plaintiffs' motion to: (1) amend their complaint to add

21   additional creditor plaintiffs and corporate defendants, and (2) expand the existing preliminary

22   injunction order to these corporate defendants.  For the following reasons, the Court **GRANTS**

23   Plaintiffs' motion to amend the complaint and **DENIES** Plaintiffs' motion to expand the preliminary

24   injunction order to the additional corporate defendants **without prejudice**.

25
                                       **BACKGROUND**
26
          The Perishable Agricultural Commodities Act ("PACA") aims to prevent unfair business
27
     practices and promote financial responsibility in the interstate commerce of the shipping and handling
28
     of perishable agricultural commodities.  PACA requires that brokers and dealers be licensed by the

[08cv914]

Secretary of Agriculture and that licensees refrain from unfair business conduct. Here, the supplier Plaintiffs sold Defendant Sammy's Produce ("Sammy's") produce and Defendants have failed to pay. Sammy's alleges that it has not been able to pay its "PACA debts" because it sold the produce to other PACA vendors and that these vendors failed to pay them.

On May 23, 2008, Plaintiffs filed and obtained a temporary restraining order ("TRO") against Defendants. The parties then stipulated to a preliminary injunction order that essentially freezes Sammy's assets until the debt is repaid, and also mandates Sammy's to file with the Court weekly reports reflecting the status of its assets. On June 18, 2008, this Court issued that preliminary injunction order.

In the instant motion, Plaintiffs assert that after they obtained the TRO, six additional businesses contacted them regarding monies owed to them by Sammy's. Plaintiffs state that they also discovered four other businesses who, by virtue of either their ownership interest in Sammy's, their payment of Sammy's debts, or their receipt of PACA trust assets from Sammy's, should be properly joined as defendants.

As a result, Plaintiffs seek to: (1) amend the complaint to add the new creditor plaintiffs; (2) amend the complaint to add US Farms, California Produce Exchange ("Cali Pro"), and two other corporate defendants–World Garlic & Spice, and American Nursery Exchange–to the complaint ("the Proposed Defendants"); and (3) expand the preliminary injunction order, under an alter ego theory of liability, to these Proposed Defendants. Defendants do not object to Plaintiffs' request to amend the complaint to add new plaintiffs, and to expand the monetary amount of the preliminary injunction to include the additional claims.[1] However, Defendants object to amending the complaint to add the Proposed Defendants and to expanding the terms of the preliminary injunction to the Proposed Defendants. [Defs.' Opp. at 2.]

---

[1] Plaintiffs state that this would increase the aggregate claim amount from $301,726.15 in the preliminary injunction order to $914,526.98. [Pls.' Reply at 1.]

1

2                                    **LEGAL STANDARD**

3   **I.      Leave to Amend**

4           Under Rule 15 of the Federal Rules of Civil Procedure, "a party may amend the party's

5   pleading only by leave of court or by written consent of the adverse party; and leave shall be freely

6   given when justice so requires."  Leave to amend is granted with "extreme liberality." <u>Morongo Band</u>

7   <u>of Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990).  "There are several accepted reasons

8   why leave to amend should not be granted, including the presence of bad faith on the part of the [party

9   seeking to amend], undue delay, prejudice to the [party opposing amendment], futility of amendment,

10  and that the party has previously amended the relevant pleading." <u>Advanced Cardiovascular Sys., Inc.</u>

11  <u>v. SciMed Life Sys., Inc.</u>, 989 F. Supp. 1237, 1241 (N.D. Cal. 1997).

12

13  **II.     Preliminary Injunction**

14          "A preliminary injunction is appropriate when a plaintiff demonstrates 'either: (1) a likelihood

15  of success on the merits and the possibility of irreparable injury; or (2) that serious questions going

16  to the merits were raised and the balance of hardships tips sharply in [the plaintiff's] favor.'" <u>Lands</u>

17  <u>Council v. Martin (Lands Council II)</u>, 479 F.3d 636, 639 (9th Cir. 2007) (<u>quoting</u> <u>Clear Channel</u>

18  <u>Outdoor Inc. v. City of Los Angeles</u>, 340 F.3d 810, 813 (9th Cir. 2003)).  These two options represent

19  extremes on a single continuum: "the less certain the district court is of the likelihood of success on

20  the merits, the more plaintiffs must convince the district court that the public interest and balance of

21  hardships tip in their favor." <u>Sw. Voter Registration Educ. Project v. Shelley</u>, 344 F.3d 914, 918 (9th

22  Cir. 2003) (en banc) (per curiam).

23

24  **III.    Alter Ego Theory of Liability**

25          When a plaintiff claims that an opposing party is unjustly hiding behind the corporate form,

26  a legal principle known as the alter ego doctrine comes into play.  This doctrine allows a court, in

27  cases of misuse, to disregard or pierce through the corporate form to hold individual shareholders

28  liable for the actions of the corporation.  The doctrine is an extreme remedy that is sparingly used.

1   Sonora Diamond Corp. v. Superior Court, 83 Cal.App.4th 523, 538-39 (2000).  In appropriate

2   circumstances, the doctrine also permits a court to treat two corporations as one.  State law controls

3   the circumstances under which it is appropriate to pierce a corporate veil.  Enterprise Acquisition

4   Partners, Inc., 319 B.R. 626, 634 (9th Cir. B.A.P. 2004); Flores v. DDJ, Inc., 2007 U.S. Dist. LEXIS

5   88242, *13 (E.D. Cal. Nov. 28, 2007) (applying California law in determining whether an alter ego

6   theory should justify liability under PACA).

7          Under California law, there is no bright line test to establish when the alter ego doctrine

8   applies.  Whether the corporate veil should be pierced will always depend on the circumstances

9   surrounding each particular case.  Nevertheless, there are two general requirements that must be met

10  before the alter ego doctrine can be invoked.  First, there must be such unity of interest or ownership

11  that the separate personalities of the alter ego and the corporation no longer exist.  Second, it must be

12  established that adherence to the corporate fiction will sanction a fraud, promote injustice or otherwise

13  create an inequitable result.  Mesler v. Bragg Management Co., 39 Cal. 3d 290, 300 (1985); Wood v.

14  Elling Corp., 20 Cal. 3d 353, 365 n.9 (1977); Arnold v. Browne, 27 Cal.App.3d 386, 397 (1972) ("The

15  purpose of the doctrine is not to protect every unsatisfied creditor, but rather, to afford him protection,

16  where some conduct amounting to bad faith makes it inequitable").  Where two corporations are

17  involved, the corporate form may be disregarded where one corporation is the mere instrumentality,

18  agency, conduit, or adjunct of another corporation, as may occur in a parent-subsidiary relationship.

19  Ngoc Tran v. Farmers Group, Inc., 104 Cal. App. 4th 1202, 1219 (2002).  Alter ego liability can also

20  be found between two sister corporations when they are being operated as a single enterprise.  Id.; Las

21  Palmas Associates v. Las Palmas Center Associates, 235 Cal. App. 3d 1220, 1249-50 (1991).

22          In analyzing the totality of the circumstances, there are a number of factors that the courts

23  consider to be important, including: commingling of funds or assets; treatment by an individual of

24  corporate assets as his own; failure to obtain authority to issues stock or to subscribe to or issue stock;

25  the failure to maintain corporate formalities; confusion of records between separate entities; ownership

26  of all stock by one individual or the members of a family; use of the same office or business location;

27  use of same employees; failure to adequately capitalize a corporation; the total absence of corporate

28  assets; use of a corporation as a mere shell or conduit for another person or entity; use of a corporation

1   to procure labor, services or merchandise for another person or entity, and the manipulation of assets

2   or liabilities between entities to concentrate the assets in one and the liabilities in another.  See

3   Associated Vendors, Inc. v. Oakland Meat Co., 210 Cal. App. 2d 825, 838-40 (1962) (collecting cases

4   supporting these and other factors).  While this list is not exhaustive, it amply demonstrates the wide

5   variety of factors that a court may consider in determining whether the alter ego doctrine should be

6   invoked.

7          It is the burden of the party asserting alter ego to overcome the presumption of the separate

8   existence of the corporate entity.  Matter of Christian & Porter Aluminum Co., 584 F.2d 326, 338 (9th

9   Cir. 1978); Mid-Century Ins. Co. v. Gardner, 9 Cal.App.4th 1205, 1212 (1992).  The trial court's

10  decision must be based upon a preponderance of the evidence and an appellate court will not disturb

11  the trial court's decision on the issue if there is substantial evidence to support it.  Wollersheim v.

12  Church of Scientology, 69 Cal. App. 4th 1012 (1999); Dow Jones Co. v. Avenel, 151 Cal. App.3d 144

13  (1984).

14

15                              **DISCUSSION**

16  **I.      Defendants' Alleged "Delay" in Raising the Instant Motion is Not Dispositive**

17         As Plaintiffs note, Defendant's primary objection to the relief sought by Plaintiffs seems to

18  relate to timing.  Plaintiffs filed the instant motions on July 3, 2008. [Doc. No. 32.]  Defendants argue

19  that by early June, before this Court issued the preliminary injunction order, Plaintiffs' counsel had

20  the requisite information to amend the complaint and move for an expanded preliminary injunction

21  against the Proposed Defendants.  As a result, Defendants allege that Plaintiffs' failure to seek an

22  expanded preliminary injunction order in early June should ostensibly preclude it from obtaining such

23  relief in July.  It is true that "undue delay" is a reason for preventing leave to amend.  However, here,

24  the alleged delay is roughly one month, and is therefore not "undue."  Moreover, the Court finds no

25  reason why this one month delay should prevent the injunctive relief sought.

26

27

28

## II.    Plaintiffs Have Not Demonstrated that Expanding the Existing Preliminary Injunction Order is Warranted at this Time

### A.    Parties' Arguments

To support their alter ego theory of liability against the Proposed Defendants, Plaintiffs allege:

(a) Sammy's, Cali Pro, US Farms, World Garlic, and American Nursery conduct business from the same business location;
(b) World Garlic pays the debts owed by Defendant Sammy's;
(c) American Nursery pays the debts owed by Defendant Sammy's;
(d) Defendant YS [Yan Skwara] is the principal corporate officer for Sammy's, Cali Pro, US Farms, World Garlic, and American Nursery;
(e) Defendant YS controls the day-to-day operations of Sammy's, Cali Pro, US Farms, World Garlic, and American Nursery;
(f) Cali Pro has ownership interest in Sammy's;
(g) US Farms has ownership interest in Cali Pro;
(h) During the first two quarters of this year, Sammy's made loan payments to its parent company (US Farms) in an amount at least as great as $182,350, all of which qualifies as PACA trust assets and which was transferred to US Farms in violation of the PACA trust; and
(i) US Farms refuses to disgorge the $182,350 in loan payments which it received from Sammy's in violation of the PACA trust because it does not have the money on hand to do so.

[Pls.' Motion at 5.]

Plaintiffs stress that it is uncontested that US Farms is the parent company of Cali Pro, that Cali Pro is the parent and owner of Sammy's, and that current Defendant Yan Skwara controls all three entities as their CEO, and signs checks on their accounts. Plaintiffs contend that US Farms is an alter ego of Defendant Sammy's produce in part because it "commingles" its financial affairs with Sammy's. Plaintiffs add that US Farms is the corporate "puppeteer [that] moved and commingled funds among the network of related corporate entities with no regard to their separate corporate identities[.]" [Pls.' Reply at 4-5.] Other than the questionable loan repayment, Plaintiffs did not provide any other proof of commingling funds. They also did not provide evidence showing that the entities abused their corporate form.

Plaintiffs also argue that US Farms is on the brink of insolvency and that:

[i]ts continual search for new investors, and its unfettered ability to withdraw assets from any of its shell subsidiaries, and its ability to continue to dissipate assets already removed from Sammy's makes it imperative that the Preliminary injunction be extended to reach US Farms, Inc. and its subsidiaries.

[Pls.' Reply at 7.] However, Plaintiffs also do not provide evidence to support this claim.

In turn, Defendants admit that Sammy's is a subsidiary of US Farms, but contend that the loan

repayment at issue does not necessarily involve PACA assets and is certainly not evidence that the two

entities are "commingling" funds.  [Defs.' Opp. at 4.]  They argue that:

> Because having a subsidiary that owes money negatively reflects on a publicly traded company, it makes sense for US Farms, Inc. to arrange to have other subsidiaries pay those debts when possible.  This does *not* mean, however, that the assets of these other subsidiaries are being commingled or treated as the same as Sammy's assets.

[Id. at 4.]  They also warn against extending the preliminary injunction to US Farms since it will "shut

down a publicly traded company owned by thousands of people."  [Id. at 2.]  However, as Plaintiffs

have noted, Defendants have also not presented any evidence that demonstrates the Proposed

Defendants are not involved in Sammy's financial affairs or in the dissipation of Sammy's PACA trust

assets.  [Id.]  As Plaintiffs put it, Defendants have not put forth evidence to refute that the Proposed

Defendants were nothing more than inchoate "shells."  [Pls.' Reply at 6.]


**B.**      **Analysis**

**1.**      **US Farms & Cali Pro**

Plaintiffs maintain a fair likelihood of success on the merits of their case against US Farms and

Cali Pro.  They have established the existence of several factors supporting an alter ego theory of

liability.  As mentioned, it appears Sammy's may have improperly repaid a loan to its parent company,

US Farms, in the amount of $182,350, because that money should have gone to Plaintiffs pursuant to

PACA trust laws.  In addition, US Farms is the parent company of Cali Pro and Cali Pro is the parent

and owner of Sammy's.  Defendant Yan Skwara controls all three entities as their CEO, signs checks

on their accounts, and also controls their day-to-day operations.  Sammy's, Cali Pro, and US Farms

conduct business from the same location.

On the other hand, Plaintiffs have not demonstrated that these companies have a pattern of

commingling funds, that they disregarded corporate formalities, confused records, abused the

corporate form, or significantly departed from the norms of a traditional parent-subsidiary relationship.

See In re Automobile Antitrust Cases I and II, 135 Cal. App. 4th 100, 120 n.10 (Cal. Ct. App. 2005)

(describing, in the context of agency law, interlocking directors and officers, consolidated reporting

and shared professional services as common characteristics of a parent-subsidiary relationship);

Tomaselli v. Transamerica Ins. Co., 25 Cal.App.4th 1269, 1285 (Cal. Ct. App. 1994) (describing as

1  "woefully short" for the purposes of imposing alter-ego liability allegations that "the parent company

2  owned 100 percent of the subsidiary's stock, it shared office space and policy manuals with the

3  subsidiary, they had some common personnel, and they had consolidated financial statements").

4      Further, the alter ego doctrine is an "extreme remedy, sparingly used." <u>Sonora</u>, 83 Cal.App.4th

5  at 538-39.  "[T]he purpose of the doctrine is not to protect every unsatisfied creditor, but rather, to

6  afford him protection, where some conduct amounting to bad faith makes it inequitable[.]"  <u>Arnold</u>,

7  27 Cal.App.3d at 397.  Here, Plaintiffs have not made a showing that any of the Proposed Defendants

8  have acted in "bad faith" or that failing to apply the doctrine would "sanction a fraud or promote

9  injustice."  <u>Roman Catholic Archbishop</u>, 15 Cal.App.3d at 411; <u>Davanzia, S.L. v. Laserscope, Inc.</u>,

10  2007 U.S. Dist. LEXIS 58757, *15 (N.D. Cal. July 30, 2007) ("Alter ego is a limited doctrine, and the

11  Court will not expand it by applying it to allegations that describe a typical parent-subsidiary

12  relationship.") (internal quotations and citations omitted).  Therefore, the Court finds that Plaintiffs

13  only maintain a fair likelihood of success.

14      However, the possibility of "irreparable injury" appears less than fair.  It is far from certain

15  that US Farms and Cali Pro are heading towards bankruptcy or insolvency.  Plaintiffs have not

16  provided any legitimate facts to justify this claim.  Consequently, it is unclear that Plaintiffs will face

17  an "irreparable injury" if they have to wait to conduct discovery and obtain a judgment on the merits.

18  Furthermore, Plaintiffs are seeking extraordinary relief by asking to freeze the assets of both

19  companies.

20      Thus, in sum, the Court finds that Plaintiffs have only shown a fair likelihood of success on

21  the merits and a slight possibility of irreparable injury.  Therefore, the Court will not grant such severe

22  injunctive relief at this time.

23

24              **2.    World Garlic & American Nursery**

25      Plaintiffs have shown that: (1) World Garlic and American Nursery have paid some of

26  Sammy's debts; (2) that Defendant Yan Skwara is the principal corporate officer controlling the day-

27  to-day operations of both companies; and (3) that the companies conduct business from the same

28  location as Sammy's.  However, similar to US Farms and Cali Pro, Plaintiffs have not shown that

these companies have a pattern of commingling funds with Defendants, that they have disregarded corporate formalities, confused records, or abused the corporate form.  In fact, the case against these companies is far weaker than the case against US Farms and Cali Pro because Plaintiffs have not provided evidence showing: (1) that these two companies directly received Plaintiffs' PACA assets, or (2) that either of these two companies have an ownership interest in Sammy's.  Finally, Plaintiffs have also not explained how the element of bad faith exists in relation to these two companies.  As a result, Plaintiffs have not demonstrated a fair likelihood of success.

Additionally, Plaintiffs have failed to provide evidence showing that these two companies are nearing insolvency or bankruptcy.  Therefore, they have not demonstrated the possibility of irreparable injury as to these two companies.

Thus, in sum, the Court will not expand the preliminary injunction order to the Proposed Defendants.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion to amend the complaint, but **DENIES** Plaintiffs' motion to expand the preliminary injunction order to the Proposed Defendants **without prejudice**.

IT IS SO ORDERED.

DATED:  August 18, 2008

Honorable Janis L. Sammartino
United States District Judge

- 9 -

[08cv914]